850 So.2d 807 (2003)
Lula GRIFFIN and Genelle Labranch
v.
Philip KURICA, His Insurance Company, American National Property & Casualty, Daniel Kurica, and His Unknown Insurance Company, ABC Insurance Company.
Danette M. Brignac and Richard J. Brignac
v.
Daniel Kurica, Phillip Kurica, and His Liability Insurance Carrier, American National Property and Casualty Company.
Nos. 03-CA-190, 03-CA-191.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2003.
*808 Fred R. DeFrancesch, LaPlace, LA, for Lula Griffin and Genelle Labranche, Plaintiffs-Appellants.
Steven B. Witman, Valerie Theng Matherne, Metairie, LA, for American National Property and Casualty Company, Defendant-Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is a suit arising from a 1997 multiple-car rear-end collision, in which the plaintiffs seek an increase in the quantum awarded them by the trial court.[1] We affirm the trial court's award, for the reasons that follow.
The accident occurred on December 31, 1997 on Main Street in St. John the Baptist Parish. A vehicle owned by Phillip Kurica and being driven by Daniel Kurica struck the rear of a car in a line behind a car that was waiting to turn. The car waiting to turnthe first car in the line was being driven by Lula Griffin with her daughter, Genelle Labranche, as passenger.[2] The Kurica vehicle's action caused a domino-effect chain reaction through the line of cars and the Griffin vehicle was struck by the car immediately behind it.
Griffin and Labranche complained of injuries. They filed suit in September 1998, but the matter did not go to trial until July *809 10, 2001, when a bench trial resulted in judgment in favor of the plaintiffs. The trial court awarded Lula Griffin damages in the amount of $11,458.00, consisting of $8,458.00 in special damages and $3,000.00 in general damages. The court awarded Genelle Labranche $11,878.91, comprising $7,578.91 in special damages and $4,300.00 in general damages.
In Reasons for Judgment contained within the judgment, the trial court commented:
Lulu [sic] Griffin testified that she was injured in the accident. She saw Dr. Robert Dale, DC and Dr. Stewart Phillips as a result of the accident. Plaintiff incurred hospital, MRI, ambulance, towing and medicine bills as well. The doctors related the condition to the accident. The court notes the large gaps in treatment which reflects directly upon the award herein.
Genelle Labranche also testified that she was injured in the accident; she was a passenger in the Griffin vehicle. She also saw Dr. Robert Dale, DC and Dr. Stewart Phillips as a result of the accident. Plaintiff incurred hospital, MRI, ambulance, and medicine bills as well. The doctors related the condition to the accident. The court notes the large gaps in treatment which reflects directly upon the award accordingly. The court is skeptical as to the extent of damage caused by the impact upon this witness also.
The court finds that Phillip Kurica Jr. is the legal cause-in-fact of the accident and collisions herein. He is apportioned 100% of the fault herein. His actions alone were the cause in fact of the accident(s). The plaintiffs have met the requisite burdens of proof regarding causation and damages, by a preponderance of the evidence. The vehicles ahead of Kurica were all at rest as Kurica approached from behind. He breached his duty to exercise reasonable care in the circumstances. Defendant offered no defense in the case at bar.
On appeal the plaintiffs take issue with the amount of general damages awarded them and with the lack of an award of "future damages."
Genelle Labranche asserts her injuries consist of C4-5, C5-6 and C6-7 protrusion of disc material; herniation at L4-5, L5-S1; and projection of disc material into the thecal sac at L1 and L2, with chronic cervical strain and a lumbar herniation, resulting in permanent disability.
Lula Griffin enumerates her injuries as an L5-S1 herniation of the extended type, with disc material protruding through the posterior fibers of the disc annulus; anxiety that prevented her from completing the cervical spine MRI; with a herniated lumbar disc and ongoing cervical problems.
Plaintiffs complain the trial judge erred in stating he was "skeptical," when the uncontradicted reports of Dr. Phillips support plaintiffs' claims that their injuries are related to the accident made the basis of this suit. Alternatively, plaintiffs assert that "skeptical" means the judge was not sure and, under these circumstances, the plaintiffs should get the benefit of the doubt. They contend the value of the injuries sustained must be based on the medical findings and conclusions and the judge's acquiescence therein.
Plaintiffs assert that the jurisprudence regarding similar injuries supports an award exceeding $50,000.00.
In their brief defendants contend the trial court was correct in its assessment of damages to plaintiffs, because the court's findings were based on reasonable factual grounds and may not be reversed absent manifest error.
*810 Plaintiffs' vehicle, as shown in photographs to which the parties stipulated, shows very little damage. As the trial judge emphasized, Labranche had large gaps in her treatment: she was treated at River Parishes Hospital on the date of the accident, but did not seek further treatment for approximately one month after the accident, when she was treated by a chiropractor, Dr. Robert Dale.
Her chiropractic treatment was sporadic, however, and at times she had only three physical therapy sessions within a month, at other times none during an entire month. Her last visit to the chiropractor was in August 1998.
Labranche visited the New Orleans Orthopedic Clinic in August and November 1998; her next medical treatment was not until February 2000, when she went to Louisiana Clinic. At that time examination revealed only mild spasm; the straight leg test was normal.
Labranche's 1998 MRI of her cervical and lumbar spine revealed a 1-2 mm and posteriolateral bulging with no evidence of disc herniation; there was a partial narrowing of the disc space at L1-2, with 1 mm or so anterior and posterior bulging, but no focal prominence to indicate actual disc herniation. Although the radiologist noted a "vague crescent" of dark signal projecting within the thecal sac at the L1-2 level, which looked like a large central posterior herniation, he did not think it was a real finding because if she had such a herniation it would be "quite obvious in the sagittal perspective," but it is not. He noted further that there is also partial degenerative narrowing of L1-2 and T12-L1 with disc dehydration but no actual disc herniation.
In addition, Labranche was in a prior automobile accident in 1996, after which she was treated at the same chiropractic clinic for neck and back injuries.
The trial court also mentioned the large gaps in treatment of Lula Griffin. Like Labranche, she was treated at River Parish Hospital following the accident, but did not seek further treatment until approximately a month later. Her chiropractic treatment also was sporadic and she rarely had more than two or three visits a month. She also had significant gaps in treatment at Louisiana Clinic, with gaps up to seven months and even a year between visits.
The radiologist noted in his report on the MRI that Griffin had disc dehydration and degeneration at L5-S1. The orthopedist, Dr. Stuart Phillips, stated that disc herniations can be traumatic or they can be non-trauma-related. He indicated that a woman in her sixties such as Griffin could have herniation as a result of disc degeneration. Further, there were significant degenerative changes in her other lumbar discs. Dr. Phillips agreed that Griffin's L5-S1 herniation also could have resulted form the degenerative process, which would be clearly evidence at that level and for a woman of her age.
In addition, Dr. Phillips diagnosed Griffin with Scheuermann's Kyphosis, a developmental condition that is hereditary, occurs in adolescence, and is accompanied by arthritis that usually affects the thoracic and lumbar spine. In addition, she has idiopathic scoliosis, a degenerative intervertebral disc disease and degenerative joint disease of the spine.
[A]n appellate court may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own *811 evaluations and inferences are as reasonable.
Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
There is a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, 617 So.2d 880, 882 (La.1993).
An appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Ambrose v. New Orleans Police Dep't. Ambulance Serv., 93-3099, p. 6 (La.7/5/94), 639 So.2d 216, 221.
Where there is conflict in the testimony, reasonable determinations of credibility and reasonable inferences of fact should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
The reasons for these well-settled principles of review are not only the trial court's better capacity to evaluate live witnesses, as compared to the appellate court's access only to a cold record, but also the proper allocation of trial and appellate function between the respective courts. Pinnsoneault v. Merchs. & Farmers Bank & Trust Co., 01-2217, p. 11 (La.4/3/02), 816 So.2d 270, 279.
Applying these principles of law to the facts of this case, we find no manifest error nor abuse of discretion in the trial court's determinations. The impact caused very little damage to plaintiffs' vehicle. Plaintiffs had substantial gaps in treatment for soft-tissue injuries. The judgment is based on reasonable credibility determinations and factual evaluations. Accordingly, we find no basis on which to disturb the judgment.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.
NOTES
[1] This case was consolidated in the district court with another suit arising out of the same accident, but that case settled on the date of trial. Although the companion case was lodged as a consolidated case with the instant matter, it is not before us on this appeal. Brignac v. Kurica, No. 03-CA-191 on the docket of this Court and No. 39367 on the docket of the 40th Judicial District Court.
[2] The second plaintiff's last name was erroneously spelled "Labranch" in the original petition, although the correct spelling is "Labranche," which is how it is spelled in the subsequent pleadings. Because the record bears the incorrect version of the name in the caption, for consistency in record-keeping we have retained it for the case caption in this Court, but will use the correct spelling in the body of the opinion.