ROBERT M. MURPHY, Judge.
|2In this action for damages arising out of a motor vehicle accident, the defendants, Steve Dubuc and Allstate Insurance Company, appeal a judgment rendered in favor of plaintiff Page Sanchez awarding him damages for his injuries. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On December 14, 2009, plaintiff-appellee Page Sanchez was operating his vehicle in traffic in Kenner, Louisiana. While stopped at a traffic light, Mr. Sanchez was *1142 rear-ended by defendant-appellant Steve Dubuc, after Mr. Dubuc’s foot slipped off his brake pedal as he was approaching the traffic light immediately behind Mr. Sanchez. At the time of the accident, Mr. Dubuc was insured through defendant-appellant Allstate Insurance Company (“Allstate”).
Thereafter, Mr. Sanchez commenced this action on December 13, 2010 to recover damages for injuries he sustained as a result of the accident and named as ^defendants Mr. Dubuc, Allstate and State Farm Insurance Company, Mr. Sanchez’s uninsured/underinsured motorist insurance carrier.[1] Prior to trial, defendants stipulated that Mr. Dubuc was at fault in causing the accident and that Allstate had in full force and effect a policy of automobile liability insurance, which provided Mr. Du-buc with coverage for the accident forming the basis of the suit. The parties also stipulated that the amount in controversy did not exceed the jurisdictional amount of $50,000 required for a trial by jury, exclusive of interest and costs. Therefore, the only contested issues at trial were causation and damages. Specifically, Mr. Sanchez contended that he suffered from a ruptured disc in his lower back, while defendants contended that Mr. Sanchez sustained only a lower back injury with treatment lasting four and one-half months. As a result, defendants suggested that an award of damages in the range of $15,000 to $25,000 would be appropriate for such an injury.
The case proceeded to trial on March 13, 2012. Mr. Sanchez called two witnesses to testify at trial: (1) Scott Hopkins, Mr. Sanchez’s supervisor; and (2) Mr. Sanchez. Mr. Sanchez also introduced several exhibits into evidence, including the deposition transcript of his treating physician Dr. Surendra Purohit, all of which were stipulated to and admitted without objection by defendants. In conjunction with the admission of Dr. Purohit’s deposition transcript into evidence, defendants also stipulated to Dr. Purohit’s expertise in the field of general medicine and general surgery. Defendants did not call any witnesses or offer any exhibits into evidence at trial.
Following a bench trial, the judge returned a verdict in favor of Mr. Sanchez, awarding him damages in the amount of $50,000, including $47,462 in general damages, $1,698 for medical expenses, and $840 for lost wages. The court also l4awarded Mr. Sanchez $2,497.60 in judicial interest and $2,218.25 for court costs and expenses. In its oral reasons for judgment, the court stated, “[based upon the testimony of the witnesses and all the exhibits introduced — and I put a lot of emphasis on the Doctor’s testimony, the doctor was quite clear — I find for the Plaintiff.” Specifically, the court concluded that based upon the stipulated testimony of Dr. Purohit, the doctor substantiated a ruptured disc. Defendants now appeal this decision.
On appeal, defendants raise four assignments of error for our review: (1) the trial court abused its discretion when it misinterpreted the medical opinion of Dr. Puro-hit as substantiating a ruptured disc; (2) the trial court abused its discretion when it found that Mr. Sanchez sustained a ruptured disc in the accident based upon the expertise of a “vascular and general surgeon” without the aid corroborative diagnostic testing; (3) the trial court abused its discretion when it failed to determine that Mr. Sanchez failed to mitigate his dam *1143 ages; and (4) the trial court abused its discretion when it awarded an excessive amount for general damages beyond those actually proven at trial.
Mr. Sanchez opposes defendants’ appeal and requests that this Court award sanctions against defendants under La. C.C.P. art. 2164 for filing a frivolous appeal.
LAW AND DISCUSSION

Assignments of Error Nos. One and Two

Because assignments of error numbers one and two both attack the trial court’s evaluation of Mr. Sanchez’s expert’s testimony, we will address them together. According to the record, Mr. Sanchez sought medical care for his injuries sustained in the accident at issue from several physicians. On December 15, 2009, the day after the accident, Mr. Sanchez reported to the emergency room [.¡at Lallie Kemp Hospital with complaints of back pain and numbness in his right leg. The attending physician, Dr. George DesOrmeaux, diagnosed Mr. Sanchez with lumbar nerve root compression. Dr. DesOrmeaux instructed Mr. Sanchez to stay in bed for three days and to follow up with his primary care physician if the symptoms persisted. He also wrote Mr. Sanchez prescriptions to heal lumbar muscle spasms.
On December 29, 2009, Mr. Sanchez reported to Pelican State Outpatient Center with complaints of pain on both sides of his lower back that worsened throughout the day. The treating physician, Dr. John Steen, ordered x-rays of Mr. Sanchez’s lower back and conducted a physical examination. After diagnosing Mr. Sanchez with back pain, Dr. Steen administered a DepoMedrol injection to alleviate Mr. Sanchez’s pain and advised Mr. Sanchez to follow-up with his primary care physician in one week.
On January 4, 2010, Mr. Sanchez reported to Dr. Purohit with complaints of lower back pain and pain radiating down his right leg. Medical records from this visit show that Mr. Sanchez informed Dr. Puro-hit that he was involved in the a rear-end collision on December 14, 2009 and had treated with Drs. DesOrmeaux and Steen prior to seeing Dr. Purohit. Dr. Purohit diagnosed Mr. Sanchez with acute back syndrome with severe muscle spasms. He wrote Mr. Sanchez several prescriptions for pain medication and instructed him to return for a follow-up appointment in one month.
Mr. Sanchez returned to Dr. Purohit for three additional appointments occurring on January 25, 2010, February 25, 2010, and April 26, 2010. On all three appointments, Dr. Purohit consistently diagnosed Mr. Sanchez with acute back syndrome with muscle spasms. During the April 26, 2010 appointment, Dr. Purohit advised Mr. Sanchez to return for a follow-up appointment in one month. | ^However, Mr. Sanchez did not seek any further medical care after April 26, 2010. At trial, Mr. Sanchez testified that he did not continue his medical treatment because he ran out of vacation time at his place of employment. Rather, he explained that he “just learned to deal with the pain.” When asked why he did not submit to an MRI during his treatment, Mr. Sanchez also attributed this to his inability to take off any more days of work.
During Dr. Purohit’s deposition, defense counsel questioned him about the certainty of his medical findings in light of the fact he did not conduct an MRI of Mr. Sanchez’s back following the accident at issue. In response, Dr. Purohit testified as follows:
DR. PUROHIT:
So my feeling is that clinically I am certain that he did have a tear in the disc and that was pressing on the nerve. But depending on if the MRI was done, then I could have said how big the disc *1144 was. So I cannot say for certain anymore that part, but he definitely has the disc, you know, rupture of that part because there was irritating and numbness.
MR. BEARD:
And without any objective findings, can you say with any certainty whether he had a herniated disc, bulging disc or a—
DR. PUROHIT:
Well, that’s what — discs, usually they bulge. Depending on the degree, how much disc degree of the bulge, that I cannot say. That has to be done by the MRI.
MR. BEARD:
Okay.
DR. PUROHIT:
But I can say for clinic certainty that he definitely had the injury to the muscle and ligament and definitely the disc because it was pressing on the nerve.
|7A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Foley v. Entergy Louisiana, Inc., 06-983 (La.11/29/06); 946 So.2d 144, 153 (citing Ferrell v. Fireman’s Fund Insurance Co., 94-1252 (La.2/20/95); 650 So.2d 742, 745). “Under this rule, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.” Foley, 946 So.2d at 153. “If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id.
When the findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of fact, for only the fact finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Johnson v. Lee, 10-439 (La.App. 5 Cir. 11/23/10); 54 So.3d 704, 706. The rule that questions of credibility are for the trier of fact applies equally to the evaluation of expert testimony. Id. (citing Lasyone v. Kansas City Southern Railroad, 00-2628 (La.4/3/01); 786 So.2d 682, 693).
After reviewing the record in its entirety, we find no manifest error in the trial court’s finding that Dr. Purohit’s testimony established that Mr. Sanchez sustained a ruptured disc as a result of the accident at issue — even without an MRI. The trial court stated that it “put a lot of emphasis” on the testimony of Dr. Purohit, which defendants stipulated to at trial. Defendants did not call a single witness or introduce a single exhibit at trial. Moreover, defendants did not request that Mr. Sanchez submit to an independent medical examination at any time prior to trial. As a result, there is nothing in the record to rebut Dr. Purohit’s testimony and his expert opinion that Mr. Sanchez sustained a ruptured disc.
|RAs for defendants’ argument that the trial court was in error for basing its ruling upon the expertise of a “vascular and general surgeon,” we find no merit to this claim. The record reflects that defendants stipulated to Dr. Purohit’s expertise in the fields of general medicine and general surgery at trial. Therefore, we find no merit to defendants’ assignments of error numbers one and two.

Assignment of Error No. Three

Defendants allege that the trial court abused its discretion when it failed to determine that Mr. Sanchez did not mitigate his damages. “The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense.” MB Indus., LLC v. CNA *1145 Ins. Co., 2011-0303 (La.10/25/11); 74 So.3d 1173, 1181. Mr. Sanchez explained that he did not continue his medical treatment because he ran out of vacation time at work. At trial, Mr. Sanchez’s supervisor, Scott Hopkins, testified that Mr. Sanchez still continued to work for their company as of the date of trial, despite the fact that he complains of back pain once or twice a week. Mr. Sanchez testified, “I just learned that, at this point, you know, I’m hurt, I’m going to be hurt, I’m not going to have a surgery or anything to that effect, so I have to just cope with the pain.”
In its oral reasons for judgment, the trial court stated that it found Mr. Sanchez to be a “believable and compelling” witness. It is well-settled that a trial court’s findings based on determinations regarding the credibility of witnesses are subject to the manifest error-clearly wrong standard of review. Johnson, 54 So.3d at 706. Moreover, the failure to mitigate damages is an affirmative defense for which defendants bear the burden of proof at trial. Given that defendants did not submit any evidence refuting the evidence offered by Mr. Sanchez, we find no manifest error in the trial court’s failure to find that Mr. Sanchez did not mitigate his damages.
| aAssignment of Error No. Four
In their final assignment of error, defendants allege that the trial court abused its discretion by awarding an excessive amount of general damages for the injuries actually proven at trial. Following a bench trial, the court held that Mr. Sanchez sustained a ruptured disc and awarded him damages in the amount of $50,000, including $47,462 in general damages, $1,698 for medical expenses, and $840 for lost wages.
“There is no question that the abuse of discretion standard of review applies when an appellate court examines a factfinder’s award of general damages.” Wainwright v. Fontenot, 2000-0492 (La.10/17/00); 774 So.2d 70, 74. The assessment of the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Id. “As such, ‘the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.’ ” Id. (citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993)).
The testimony at trial reflected that Mr. Sanchez experienced pain and numbness in his leg as a result of his lower back injuries for a period of over three years and that he still complained of suffering from pain several days a week as of the date of trial. In fact, Mr. Sanchez testified that he fell out of the shower due to the numbness in his leg as recently as two weeks prior to trial. He further testified as to how his life has substantially changed since the accident. Specifically, Mr. Sanchez can no longer perform certain tasks around the home and at his place of employment that he was previously capable of performing. Mr. Sanchez also testified regarding his loss of enjoyment of life following the accident. As a result of the pain from his back injury, Mr. Sanchez testified that he can no longer stay |10seated long enough to enjoy a meal at a restaurant with his wife, or adequately partake in his hobby of auto mechanics.
On the other hand, defendants did not offer any evidence refuting Mr. Sanchez’s testimony regarding the substantial impact of his injuries on his daily life, or Dr. Purohit’s testimony regarding his diagnosis of a ruptured disc. In its oral reasons for judgment, the trial court held as follows:
*1146 I find his testimony quite believable and compelling, and he has testified without hesitancy that his quality of life has substantially changed. He cannot do what he used to do around his home, he can’t cut his grass, he can’t tend to simple repairs, his work life has substantially changed. And only because of the good grace of his employer that they are so understanding that they cooperate.
Defendants contend that Mr. Sanchez sustained an injury with treatment lasting only four and one-half months. Even without disc involvement, there is support in the jurisprudence for an award of $2,000 to $2,500 per month for soft tissue injuries. See Ennis v. Sears, Roebuck and Co., 08-235 (La.App. 5 Cir. 2/25/09); 9 So.3d 899 (affirming general damage award of $24,000 for a 12-month soft tissue injury within trial court’s discretion); Bittner v. Scott, 07-718 (La.App. 5 Cir. 2/6/08); 980 So.2d 5 (affirming a general damage award of $35,000 for a fifteen-month soft tissue injury); and Williams v. Roberts, 05-852 (La.App. 5 Cir. 4/11/06); 930 So.2d 121 (affirming a general damage award of $7,500 for a three-month soft tissue injury).
In the instant case, the testimony at trial established that Mr. Sanchez was still experiencing pain from his injuries as of the date of trial, March 13, 2012, which was approximately 27 months after the accident at issue. Assuming that Mr. Sanchez sustained a soft tissue injury without a disc injury diagnosis, the aforementioned jurisprudence suggests that a general damage award of $67,500 for a 27-month soft tissue injury ($2,500 per month) could well have been within the hitrial court’s discretion. Here, the trial court awarded $47,462 in general damages for Mr. Sanchez’s injury.
In two fairly recent opinions, this Court held that the lowest reasonable general damage award for a non-surgical herniated disc within a jury’s discretion was $50,000. See Webb v. Horton, 01-978 (La.App. 5 Cir. 2/13/02); 812 So.2d 91, 99; Rehm v. Morgan, 04-344 (La.App. 5 Cir. 10/26/04); 885 So.2d 687, 692-93. Given Mr. Sanchez’s and Dr. Purohit’s uncontradicted testimony and the relevant jurisprudence, we cannot say that the trial court’s general damage award of $47,462 for Mr. Sanchez’s injury was an abuse of discretion.

Sanctions for Frivolous Appeal

Mr. Sanchez seeks sanctions against defendants under La. C.C.P. art. 2164 for a frivolous appeal. While we find that defendants’ arguments are without merit, we cannot say that there is no legal basis for their position on appeal. Therefore, we will not award sanctions for a frivolous appeal.
CONCLUSION
After considering the entire record, we find the trial court’s findings were reasonable and not clearly wrong. Accordingly, for the reasons stated herein, the judgment in favor of Page Sanchez, awarding him damages in the amount of $50,000, including $47,462 in general damages, $1,698 for medical expenses, and $840 for lost wages, is affirmed.

AFFIRMED

. Mr. Sanchez subsequently dismissed his claims against State Farm Insurance Company.